**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** Plaintiff, v. **[4] RAYMOND OMAR DE JESÚS-RIVERA,** Defendant. | Crim. No. 23-433 (PAD) (MBA) |

**REPORT AND RECOMMENDATION**

In November 2023, Defendant Raymond Omar de Jesús-Rivera ("de Jesús") was indicted along with four others and charged with drug trafficking. (ECF No. 3). Specifically, he was charged with conspiracy to possess with intent to distribute 5 kilograms or more of cocaine from in or about March 2023 to the return of the Indictment. (*Id.*).

De Jesús seeks to suppress any evidence derived from four cellphones seized by the police on October 27, 2023. (ECF No. 232). The government did not oppose his motion. U.S. District Judge Pedro A. Delgado-Hernández referred de Jesús's motion to me for a Report and Recommendation. (ECF No. 234). For the reasons set forth below, I recommend de Jesús's motions be **GRANTED in part and DENIED in part**.

**BACKGROUND[1]**

In October 2022, the FBI began investigating a violent drug trafficking organization that was operating out of southern Puerto Rico and using the USPS to mail cocaine to the continental United States. (ECF No. 232-1 at 9-10). Officers identified a home in Caguas, Puerto Rico, as the originating address for both confirmed and unconfirmed cocaine laden parcels. (*Id.* at 10-11).

---

[1] The uncontested facts are taken from the exhibits submitted by de Jesús in conjunction of his motion, these include the Affidavit submitted in support of the application for a search warrant appended by de Jesús to his motion to suppress, (ECF No. 232-1), as well as other exhibits he received from the government.

On October 27, 2023, law enforcement officers conducting surveillance at the home intervened twice with de Jesús. (ECF No. 232-1 at 12-13). The first time de Jesús arrived at the home at about 11:00 a.m. in a white Ford Transit van ("the Ford") with illegally tinted windows. (*Id.* at 12). During the traffic stop de Jesús consented to a search of the Ford, but declined to sign a form indicating as much. (*Id.*). A K-9 alerted to the presence of narcotics in the Ford. (*Id.*). de Jesús had two phones on his person: one with an orange protective case and one with a green protective case.[2] (*Id.* at 12, 15). After de Jesús was let go by the officers, he returned that same day to the house with two other men. (*Id.* at 12). Law enforcement, who were still conducting surveillance, saw the three enter the house and exit with one of them carrying a postal parcel. (*Id.*). After they got in the car, the officers conducted a second traffic stop for illegally tinted windows. (*Id.*). One of the men (not de Jesús), consented to the search of a small bag on his person where officers found approximately $9,000 in cash. (*Id.* at 12-13). The Affidavit does not indicate what happened next.

The next day, October 28, 2023, an FBI agent requested and obtained authorization from the on duty Magistrate Judge to search the Ford along with the two phones found on de Jesús. (ECF No. 232-1 at 2-20). According to an FBI form, the orange and green covered "phones were seized after receiving instructions from [an] AUSA." (ECF No. 232-1 at 24-25). An additional FBI form indicates that two additional phones, both with black covers, were seized after officers intervened with the three men in a red Honda Accord, again following instructions from the same AUSA. (*Id.* at 22-23). The submitted and approved search warrant package neither mentioned nor included the second set of phones nor the second car. It is unclear whether they were subject to a separate application. Nevertheless, the record reflects that at least one of them was released to a second agency for

---

[2] The Affidavit's introduction sated that the phones were seized from the Ford without any additional information. (ECF No. 232-1 at 3). This appears to be an oversight as the probable cause section clearly states that the phones were seized from de Jesús's person and there had not yet been a search of the Ford such as the agents could uncover any phones within it. (*Id.* at 12).

extraction. (*Id.* at 43-44). No extraction report was produced in discovery. (ECF No. 232 at 6). Per the motion to suppress, an extraction report from one of the phones seized from de Jesús resulted in a video dated October 26, 2023 depicting "an individual with rifle magazines discussing their functions." (*Id.* at 6 (citing *Id.* at 41)). This is the only potential piece of evidence mentioned in de Jesús's motion to suppress. De Jesús argues there was no rationale for seizing the phones, and in particular, the ones seized from his person, and that their search cannot be justified by the subsequent search warrant when the affidavit was inconsistent as to how and why the phones were seized. (ECF No. 232). Therefore, he argues that any evidence derived from the phones must be suppressed. (*Id.*).

## DISCUSSION

I agree with de Jesús that there is no apparent rationale for the seizure of the phones that the agent swore were found on his person during the traffic stop and, given that his motion is unopposed, no explanation as to how the search warrant somehow cured "the taint" of any illegal seizure. *See Wong Sun v. United States*, 371 U.S. 471, 488 (1963) (holding that evidence obtained during a search may be tainted by the illegality of an earlier Fourth Amendment violation, so as to render such evidence inadmissible as "fruit of the poisonous tree"). For that reason, I recommend that the video[3] mentioned by de Jesús be suppressed, along with any other evidence seized from either the orange or green cover phones. However, as to the two black cover phones, it is not clear if they belong to de Jesús (who had already lost two phones that day) such that he has standing to challenge their seizure or the two other men he was with. Regardless, it appears no evidence was obtained from either so there is nothing to suppress. Accordingly, I recommend at that de Jesús's request be denied without prejudice as to the two black cover phones. In sum, I recommend that de Jesús's motion be

---

[3] It is unclear whether that video would be admissible at trial considering the indictment contains no firearm charges and the individual holding the rifle magazines was not identified. *See* Fed. R. Evid. 404(b).

**GRANTED in part and DENIED in part**.

## CONCLUSION

For the foregoing reasons, I recommend de Jesús's motion to suppress be **GRANTED in part and DENIED in part**.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to it must be specific and must be filed with the Clerk of Court within fourteen days from the date it is filed. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30-31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED**.

In San Juan, Puerto Rico this August 5, 2026.

*s/ Mariana E. Bauzá-Almonte*
MARIANA E. BAUZÁ-ALMONTE
United States Magistrate Judge

4